UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| WAYNE COUNTY HOSPITAL, INC., ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 09-44-GFVT |
| V. | ) ) | |
| PEETER JAKOBSON, M.D., | ) ) | **MEMORANDUM OPINION** **AND** |
| Defendant. | ) | **ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court upon several related motions. The Defendant, Dr. Jakobson, has filed a Motion to Foreclose Preclusion or To Compel Production. [R. 38.] And, in response, the Plaintiffs, Wayne County Hospital, Inc. ("Hospital" or "WCH") and Ohio Hospital Insurance Company ("OHIC"), have filed a Motion to Stay Consideration of the Defendant's motion [R. 40] as well as a Motion for Summary Judgment [R. 41]. All of these motions, at least in some way, relate to the contested applicability of claim and issue preclusion to this case. In a separate Order [R. 60], the Court previously granted Dr. Jakobson's Motion to Foreclose Preclusion and denied the Defendants' Motions to Stay Consideration and for Summary Judgment. This Memorandum Opinion sets forth the Court's reasoning.

**I.**

The relevant facts of this case are not in dispute. In August 2000, Linda Hardwick had a mammogram performed at Wayne County Hospital. Dr. Jakobson, who provided radiology services to the Hospital's patients and maintained his office in the Hospital's radiology

department, read the mammogram. Although that mammogram revealed a small mass in Mrs. Hardwick's right breast, Dr. Jakobson did not believe any additional follow up beyond her annual check up was necessary. The report of the mammogram stated that the results were "NORMAL/NEGATIVE" with "[n]o evidence of cancer" and noted that "[t]he breasts remain stable without evidence for malignancy." [R. 41, Ex. 1.] The report was signed by Dr. Jakobson and sent by the Hospital to Mrs. Hardwick along with a letter, also signed by Dr. Jakobson, printed on Wayne County Hospital letterhead. [*See* R. 41, Ex. 2.]

Mrs. Hardwick returned to Wayne County Hospital the following August for her yearly mammogram. Dr. Jakobson also signed this report. The August 2001 Report provided as follows:

> FINDINGS: The nodule seen on the previous mammogram in the right breast in the upper outer quadrant has markedly enlarged and is suspicious for CA. Biopsy should be considered. The remaining breasts are stable without skin thickening, nipple retraction, pathologic calcifications, or new discreet masses. The nodule previously was approximately 8 mm in diameter and presently is 10 mm in diameter indicating significant increase in volume of the mass.
>
> IMPRESSION: BI-RADS CATEGORY IV, SUSPICIOUS 10 MM MASS IN RIGHT BREAST, INCREASED IN SIZE FROM 8 MM IN 1 YEAR. BIOPSY SHOULD BE CONSIDERED FOR FURTHER EVALUATION.

[R. 41, Ex. 3.] This report was sent to Mrs. Hardwick in the same manner as the previous one. The letter accompanying this report, however, advised Mrs. Hardwick that the results were "ABNORMAL" and that she "should contact [her] physician or primary care provider *as soon as possible*." [R. 41, Ex. 4 (emphasis in original).]

Mrs. Hardwick subsequently had a biopsy of the mass, which was determined to be Stage 1 invasive carcinoma. She then had a mastectomy and reconstructive surgery and underwent

2

hormonal oral therapy treatment. On August 1, 2002, Mrs. Hardwick and her husband filed suit against Wayne County Hospital[1] in Wayne Circuit Court. The Complaint alleged the Hospital, acting by and through its agents and ostensible agents, was negligent in performing and/or reading the mammogram performed on August 1, 2000. The Complaint also included a claim for loss of consortium on behalf of Mr. Hardwick.

The case proceeded to trial in February 2006. At the close of all the evidence, the court granted two motions for directed verdict. Granting the Hospital's motion, the court found insufficient evidence of negligence of any other employees or agents. Granting the Hardwicks' motion, the court found that Dr. Jakobson was an ostensible agent of Wayne County Hospital. The jury subsequently returned a verdict for the Hardwicks, awarding them $828,520.00 plus costs and interest on their claims, and judgment was entered consistent with that verdict.

The Hospital appealed to the Kentucky Court of Appeals. That court affirmed the Wayne Circuit Court's Judgment, and the Kentucky Supreme Court denied the Hospital's motion for discretionary review. Pursuant to its obligations under the insurance policy issued to Wayne County Hospital, OHIC paid $1,052,952.94 to the Hardwicks to satisfy the Judgment.

The Hospital and OHIC then filed the instant suit seeking indemnification and subrogation from Dr. Jakobson for the amount paid to the Hardwicks. The Plaintiffs allege that those damages were the direct and proximate result of Dr. Jakobson's negligent failure to meet the standard of care owed to Mrs. Hardwick. And, because the Hospital was only vicariously liable due to its ostensible agency relationship with Jakobson, the Hospital asserts that Jakobson

---

[1] Notably, the Complaint did not name Dr. Jakobson as a defendant and neither the Hospital nor its insurer sought to join him.

must indemnify it.

The parties have filed several motions, including myriad responses, replies, and sur-replies. At their core, however, those motions require resolution of a single, yet complex, issue–the effect and impact of the underlying judgment on this case.

## II.

The Hospital and OHIC argue that the doctrines of issue and claim preclusion prevent Dr. Jakobson from relitigating virtually any aspect of the Hardwick case. They maintain that the jury findings, including that Jakobson was the ostensible agent of the Hospital and that his negligence was proximate cause of the Hardwicks' injuries, should be given preclusive effect in this Court. Treating the Wayne Circuit Court's decisions and verdict as binding, the Plaintiffs argue, eliminates any genuine issue of material fact in this case and entitles them to summary judgment on their indemnity and subrogation claims against Jakobson.

Dr. Jakobson, on the other hand, contends that neither claim nor issue preclusion is applicable in this case, and he has filed a Motion to Foreclose Preclusion. [*See* R. 38.] His primary argument is that because he was not a party to the state court litigation he did not have a full and fair opportunity to litigate those issues for himself. Jakobson further asserts that, beyond his actual absence from that litigation, his interests were not adequately protected because he was not in privity with the Hospital and they did not share an absolute identity of interests. Absent such an identity of interests, he argues, the underlying verdict cannot be given preclusive effect here. Because claim and issue preclusion are not applicable, Jakobson argues that myriad factual issue remain, rendering summary judgment inappropriate. The Court agrees.

Generally speaking, "the doctrine of res judicata . . . provides that a final judgment on the

4

merits of an action precludes the 'parties or their privies from relitigating issues that were or could have been raised' in a prior action." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).  Application of res judicata to give preclusive effect to a prior state court judgment necessarily implicates the Full Faith and Credit Clause of Article IV, section I of the United States Constitution.  It also implicates 28 U.S.C. § 1738 which requires "federal courts to give preclusive effect to the state-court judgments whenever the courts of the State from which the judgments emerged would do so."  *Haring v. Prosise*, 462 U.S. 306, 313 (1983); *see also Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008) (for judgments in diversity cases, federal law incorporates the rules of preclusion applied by the States in which the rendering court sits); *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 849 (6th Cir. 2006) (quotation omitted).

Res judicata consists of two distinct components, claim preclusion and issue preclusion. Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id.* (quoting *New Hampshire v. Maine*, 532 U.S. at 784-49)). "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* (internal quotation marks and citation

5

omitted).

Kentucky courts define these concepts in a similar fashion. *See, e.g.*, *City of Louisville v. Louisville Prof'l Firefighters Ass'n*, 813 S.W.2d 804, 806 (Ky. 1991) (Res judicata is a doctrine that bars subsequent suits between the same parties and their privies on a cause of action that was previously decided upon its merits.); *Buis v. Elliott*, 142 S.W.3d 137, 139-40 (Ky. 2004) (describing claim preclusion and issue preclusion as two sub-parts of res judicata).

And in Kentucky, the following three requirements must be satisfied in order for claim preclusion to bar subsequent litigation: (1) there must be identity of parties; (2) there must be identity of the causes of action; and (3) the action must have been resolved on the merits.[2] *Clemmer v. Rowan Water, Inc.*, 277 S.W.3d 633, 635 (Ky. Ct. App. 2009). Dr. Jakobson focuses his arguments on the first factor, claiming that there is no identity of parties. While he does not explicitly concede the other requirements, it appears that they are satisfied under these facts.

For instance, the second prong requires an identity of the causes of the action. In analyzing whether causes of action are identical, Kentucky courts "follow the Restatement's transactional approach." *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp. 2d 808, 813 (W.D. Ky. 2003) (citing *Harris v. Ashley*, 165 F.3d 27, 1998 WL 681219 (6th Cir. 1998) (unpublished)). This approach requires courts to look "beyond the legal theories asserted to see if the two claims stem from the same underlying circumstances." *Id.* (citation omitted). Here, although the claims themselves are not technically the same, the factual circumstances underlying the Hardwick case and the present action are identical. Both cases concern Dr. Jakobson's reading and

---

[2]The Restatement (Second) of Judgments § 19 (1982) identifies the requirement of a "valid final judgment" rather than "on the merits" due to the "possibly misleading connotations" of that phrase.

interpretation of Mrs. Hardwick's mammogram.  That issue is at the heart of the negligence claim raised in the underlying case and is similarly essential to the indemnification and subrogation claims presented in this case.  Without a finding that Jakobson was negligent, the Hospital could not have been vicariously liable to the Hardwicks.  Likewise, the Hospital and OHIC could not seek indemnification and subrogation from Jakobson if they had not paid the judgment due to that vicarious liability.  Thus, under Kentucky law, the claims are sufficiently identical to satisfy the second requirement of claim preclusion.

The third requirement, which mandates a merits determination of the underlying claim, is also satisfied.  The Wayne Circuit Court tried the issue of Dr. Jakobson's negligence and Mr. Hardwick's resulting loss of consortium, the jury returned a verdict on those issues, and Judgment was entered consistent with that verdict.  The Kentucky Court of Appeals upheld that verdict and the Supreme Court of Kentucky denied discretionary review.  Those issue have therefore been determined on the merits.

The critical issue here, however, concerns the first requirement for claim preclusion–an identity of the parties.  It is clear from the record that there is not a literal identity of the parties as Dr. Jakobson was not an actual party to the Hardwick case.  The Hardwicks sued only the Hospital.  They did not sue Dr. Jakobson, and the Hospital did not file a third party complaint against him.

As the Supreme Court has noted, "[a] person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit." *Taylor*, 553 U.S. at 891.  Indeed, the application of claim and issue preclusion to nonparties runs up against the "deep-rooted historic tradition that everyone should have his own day in court." *Id.* at

892-93 (quoting *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996)). The question thus becomes whether Jakobson can be bound to the underlying judgment despite not being an actual party to that litigation.

Absent an actual identity of parties, that factor can only be satisfied through a finding of privity between the Hospital and Jakobson. *See BTC Leasing, Inc. v. Martin*, 685 S.W.2d 191, 197-98 (Ky. Ct. App. 1984). Kentucky courts have noted that:

> [w]hile the concept of privity defies a precise, inflexible definition, a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity. This is to ensure that the interests of the party against whom res judicata has been asserted have been adequately represented by his purported privy at the initial trial of the cause of action.

685 S.W.2d at 198 (citing 46 Am. Jur. 2d Judgments § 532 (1969)). Further, "the absolute identity of legal interest is fundamental to a finding of privity and the *mere fact that two parties are interested in proving or disproving the same facts will not create privity*." *Id.* (citing *Newark Ins. Co. v. Bennett*, 355 S.W.2d 303, 304 (Ky. 1962) (emphasis added)).

The Hospital maintains that the identity of parties requirement is satisfied because Dr. Jakobson and the Hospital shared an identity of interest in the Hardwick case. More specifically, the Hospital contends that Dr. Jakobson can be bound because he was in privity with the Hospital, which adequately represented his interests at trial. But, despite the flexible nature of privity, the Court finds that the Hospital and Dr. Jakobson did not share an absolute identity of legal interest.

At a hearing on the merits of the pending motions, counsel for the Hospital noted that the best case scenario for the underlying action was for Jakobson not to be found negligent. Such a finding would obviously preclude the Hospital from being vicariously liable for Jakobson's

8

actions as a result of his ostensible agency. But, it does not follow that the parties shared an absolute identity of interest simply because they would both avoid liability under the best possible result. *See BTC Leasing, Inc.*, 685 S.W.2d at 198. This is partly because the second best result, from the Hospital's perspective, was for only Dr. Jakobson to be found negligent. In that event, the Hospital could seek indemnification from Dr. Jakobson for any damages assessed based on Jakobson's ostensible agency with the Hospital. Thus, the Hospital was playing with house money. It essentially had nothing to lose. If Jakobson was not negligent, it was off the hook. If Jakobson was negligent, and that negligence was vicariously imputed to the Hospital, it could seek reimbursement from Jakobson under a theory of common law indemnity.

The Hospital was acutely aware of this fact as it informed Jakobson approximately two weeks before the Hardwick trial that it intended to seek indemnification from him in the event of a plaintiffs' verdict. [*See* R. 38, Ex. 2.] At that precise moment, if not earlier, the Hospital's and Jakobson's interests clearly diverted. By notifying Jakobson that it would seek indemnity for any jury award, the Hospital signaled the potential of a future lawsuit. Sharing an absolute identity of interest with another party is both legally and logically inconsistent with initiating or threatening to initiate a separate lawsuit related to the same conduct against that party. Indeed, that suggests an antagonistic posture rather than an identity of interest. While the Hospital and Jakobson had a similar interest in proving or disproving certain facts, the Hospital, cognizant of its indemnity claim, did not have the same incentive to vigorously defend the claims. Under these facts, the Court cannot find that the Hospital and Dr. Jakobson shared such an identity of interests as to create privity.

The Plaintiffs also contend that Jakobson is barred by the doctrine of issue preclusion

from relitigating the issues of negligence, loss of consortium, and ostensible agency decided by the Wayne Circuit Court. According to the Kentucky Supreme Court the following requirements must be met in order for issue preclusion to operate as a bar to further litigation:

> First, the issue in the second case must be the same as the issue in the first case. *Restatement (Second) of Judgments* § 27 (1982). Second, the issue must have actually been litigated. *Id.* Third, even if the issue was actually litigated in a prior action, issue preclusion will not bar subsequent litigation unless the issue was actually decided in the action. *Id.* Fourth, for issue preclusion to operate as a bar, the decision on the issue in the prior action must have been necessary to the court's judgment. *Id.*

*Yeoman*, 983 S.W.2d at 465.

These basic requirements appear to be met in this case. The same issues related to Dr. Jakobson's negligence and ostensible agency are present in this action as well as the underlying case. Those issues were actually litigated and decided in the Hardwick case. And, the Wayne Circuit Court's decision on these issues was necessary for its judgment. That is, the court's finding that Dr. Jakobson was the ostensible agent of the Hospital and the jury's verdict that Dr. Jakobson deviated from the standard of care and that his conduct was a substantial factor in causing Mrs. Hardwick's injuries were required in order to impose the judgment in that case.

Simply satisfying those requirements does not end the analysis. This is because issue preclusion "applies only if the party against whom it is sought to be applied had a realistically full and fair opportunity to litigate the issue . . . and if principles of justice and fairness would be served by its application." *Berrier v. Bizer*, 57 S.W.3d 271, 281 (Ky. 2001) (citations omitted); *see also Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481, n.22, *reh'g denied*, 458 U.S. 1133 (1982). The right to a full and fair opportunity to litigate an issue is, of course, protected by the due process clause of the United States Constitution. *Blonder-Tongue Laboratories, Inc. v.*

*Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971).

According to the Hospital, Dr. Jakobson had the opportunity to assist or even to participate in the defense of the claims asserted by the Hardwicks, but he and his counsel declined to do so. The Hospital further contends that Dr. Jakobson took no affirmative steps to intervene or otherwise protect his interests. But exactly what steps Dr. Jakobson could have taken is not entirely clear.

Although he was aware of the Hardwicks' lawsuit for some time[3], he was not named as a defendant in that case and the Hospital never sought to join him. He was not represented by counsel in that trial. And neither he nor his counsel participated in any aspect of planning or presenting the defense of that action. Perhaps more importantly, the Hospital, despite notifying Jakobson that it would seek indemnification if it lost at trial, never tendered the defense to Jakobson or specifically requested his participation in the defense. "To have control of litigation requires that a person have effective choice as to the legal theories and proofs to be advanced in behalf of the party to the action. He must also have control over the opportunity to obtain review." *Restatement (Second) of Judgments* § 39, cmt. c. Dr. Jakobson had no input or choice as to the legal theories and proofs offered or the opportunity to obtain review, and thus exercised no control over the litigation.

Further, as discussed above, there is no privity between the Hospital and Dr. Jakobson. And contrary to the Hospital's assertions, they do not share an absolute identity of interests. The Hospital's full and fair opportunity to litigate the issues in the Hardwick case cannot be imputed

---

[3]Mere knowledge or information of the existence of such an action is entirely insufficient to bind a non-party indemnitor to the judgment. *See Restatement (First) of Judgments* § 107, cmt. e (1942).

to Dr. Jakobson. Therefore, because Jakobson was not a party to the underlying litigation, was not in privity with the Hospital, which was a party, and did not exercise any control over that litigation, he has been denied a meaningful opportunity to litigate for himself the issues raised therein.

As Dr. Jakobson correctly observes, the facts of this case are quite similar to those in *SSM Health Care St. Louis v. Radiologic Imaging Consultants, LLP*, 128 S.W.3d 534 (Mo. Ct. App. 2003), a case which, although not binding on this Court, supports the result reached here. In that case, the plaintiffs in the underlying malpractice action (the "Scott case") sued the hospital, SSM, under a vicarious liability theory based on the alleged negligent conduct of an emergency room doctor, who was its employee, as well as Dr. Koch, the physician who read the subject CT scan. Dr. Koch was not an employee of the hospital but of RIC, a separate partnership that provided radiologic services at the hospital, which the plaintiffs also sued. Prior to trial, the plaintiffs settled with Dr. Koch and the other partners of RIC (the "radiologists"). The jury returned a verdict for the plaintiffs, apportioning fault at 25% based on the negligence of the emergency room physician, and 75% based on the radiologist's negligence.[4] The jury also determined that Dr. Koch was an agent of the hospital.

The hospital then filed a claim against the radiologists seeking indemnity from Dr. Koch for the entire amount of damages assessed based on his negligence. Relying on the underlying judgment, the hospital alleged that Dr. Koch was found to be an agent of the hospital when he rendered care and treatment to the plaintiff and that his conduct was found to be negligent and to

---

[4]The trial court found that the hospital was liable for the full amount of the damages, reduced only by the settlement amount the plaintiffs received from the radiologists.

have proximately caused the plaintiffs' injuries. Like Wayne County Hospital and OHIC in this case, the hospital sought to preclude Dr. Koch from relitigating those issues based on collateral estoppel.

The appellate court, however, rejected the hospital's arguments, describing its efforts as "an unprecedented extension of offensive collateral estoppel." *Id.* at 542. The court further noted:

> The hospital, as a plaintiff, seeks to estop the defendant radiologists from relitigating issues which the *hospital previously litigated and lost* as defendants in the *Scott* case. Rather than requiring a litigant to be bound by the results of its own unsuccessful prior litigation of an issue, here the hospital would seek to bind the defendant radiologists to the adverse result the hospital itself obtained in the earlier litigation.

*Id.* (emphasis in original). The court then considered the relevant factors for applying collateral estoppel, observing that fairness is the overriding concern. *Id.*

Ultimately, the court held that "it would be simply unfair to the radiologists to allow the use of offensive collateral estoppel in the manner proposed by the hospital." *Id.* According to the court, part of the potential unfairness stemmed from the hospital's incentive for fault-shifting because it defended its own employee while simultaneously defending against claims that Dr. Koch was its agent and likewise negligent in his conduct. And, even though the radiologists participated in discovery, the court found that because they were not present at trial, they did not have a full and fair opportunity in the prior action to litigate the negligence, causation, allocation of fault, and agency issues. *Id.* at 543.

The similarities between *SSM* and the instant case cannot be overlooked. Here, the Hospital seeks to employ collateral estoppel, or issue preclusion, in a virtually identical manner

13

as SSM attempted. Wayne County Hospital, as the sole defendant in the Hardwick case, litigated and lost. And the Hospital now wants to bind Dr. Jakobson to the adverse result the Hospital itself obtained in the prior litigation.

The Hospital contends that *SSM* is distinguishable from the instant case. In particular, the Hospital notes that only Dr. Jakobson's negligence was at issue. It claims that it had no incentive for fault-shifting, like the hospital in *SSM*, because it was not also defending claims against its own employee. These points are well taken. But they do nothing to counter or distinguish the court's other finding that the radiologists lacked a full and fair opportunity to litigate the issues for themselves. Despite the fact that Dr. Koch and the radiologists in *SSM* were sued by the Scotts, participated in discovery, and settled with the plaintiffs prior to trial, the Missouri Court of Appeals still held that they were denied the requisite opportunity to defend against the claims.

Unlike the radiologists in *SSM*, however, Dr. Jakobson was never a named party in the lawsuit. He, therefore, did not have a chance to participate in discovery or settle the claim. Although that level of participation was deemed an insufficient opportunity in *SSM*, the Hospital here would nonetheless bind Dr. Jakobson to the results of the Hardwick case. Permitting preclusion under these facts, though, amounts to equating mere knowledge of a pending action with a meaningful opportunity to litigate. And such a rule stretches even the most basic notions of fairness. *See Revenue Cabinet, Comm. of Ky. v. Samani*, 757 S.W.2d 199, 202 (Ky. Ct. App. 1988) (citing *BTC Leasing*, 685 S.W.2d 191; *Waddell v. Stevenson*, 683 S.W.2d 955 (1984)) ("doctrines of res judicata and issue preclusion are based on rules of justice and fairness").

In sum, this case presents fundamental equitable and jurisprudential considerations. The policies behind claim and issue preclusion–protecting against the expense of multiple lawsuits,

conserving judicial resources, ensuring the finality of judgments, and avoiding inconsistent results–are integral to our system of law.

The Court is cognizant that not giving the underlying judgment preclusive effect creates the real potential for inconsistent results. Yet such a situation is easily avoided. To be sure, this case would not be in this Court had either the underlying plaintiffs or the Hospital sued Jakobson in the previous action. While it is also true that neither of those parties was *required* to sue Dr. Jakobson, had the Hospital filed a third party complaint against Dr. Jakobson or tendered the defense to him, there is little doubt that he would be bound by the underlying judgment. However, the Hospital cannot now bind Jakobson to a judgment to which he was not a party, particularly when Jakobson's absence from the underlying action was the direct result of a strategic choice made by the Hospital. Thus, equity and fairness dictate that the Hospital must bear the risk of potentially inconsistent results. *See BTC Leasing*, 685 S.W.2d 191 (noting that it is "difficult to lend a sympathetic ear to the appellee's request that we save him from vexatious litigation for which he himself is responsible.")

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that this matter is referred to the Honorable Hanly A. Ingram, United States Magistrate Judge, for the purpose of conducting a scheduling conference with the parties to revise and extend any necessary deadlines. Said conference shall be set by subsequent order of the Magistrate Judge.

This the 29th day of December, 2010.



Signed By:
*Gregory F. Van Tatenhove*
**United States District Judge**