UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| WAYNE COUNTY HOSPITAL, INC. and<br>OHIC, a/k/a OHIO HOSPITAL<br>INSURANCE  COMPANY | )<br>)<br>)     Civil No. 9-0044-GFVT<br>) |
| Plaintiffs, | )<br>) |
| V. | )     **MEMORANDUM OPINION**<br>)             **& ORDER** |
| PEETER JAKOBSON, M.D. | )<br>) |
| Defendant. | )<br>)<br>)<br>) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Plaintiffs' Motion to Reconsider or Make Order Immediately Appealable [R. 65], Defendant's Response [R. 75] in opposition to the Motion, and Plaintiff's Reply [R. 76] to Defendant's Response. For the reasons set forth below, the Plaintiffs' motion will be denied in part and granted in part.

**I.**

The Plaintiffs' Motion asks the Court to reconsider its previous Order [R. 60] and Opinion [R. 61] denying the Plaintiffs' Motion for Summary Judgment [R. 41]. The underlying facts in this case have not changed since the Court's earlier Opinion [R. 61]. To briefly summarize, the Plaintiffs were found vicariously liable in a prior suit in state court because of certain actions of Dr. Jakobson, the Defendant in the instant suit [*See id*. at 3]. The Plaintiffs did not join Dr. Jakobson in that suit and now seek, in this case, indemnification and subrogation from Dr. Jakobson for the amount the Plaintiffs lost in the previous state court action [*Id*.]. As the Court stated then, this case is about one issue- "the effect and impact of the underlying

1

judgment on this case." [*Id*. at 4].

In its previous Opinion [R. 61] on the issue, the Court ruled in favor of Dr. Jakobson after applying the relevant law as it relates to both claim and issue preclusion. The Plaintiffs now ask the Court to reconsider its prior ruling. When a Court is faced with a Motion to Reconsider, "[d]istrict courts possess the authority and discretion to reconsider and modify their interlocutory orders at any time before final judgment." *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 Fed. Appx. 942, 945 (6th Cir. 2004). Thus, the Court has full authority to vacate, change, or modify its prior Order.

## II.

### A.

The Plaintiffs argue that the Court misapplied the doctrine of claim preclusion because of an error in analyzing the privity factor [R. 65, 3-10]. "Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action." *Yeoman v. Commonwealth, Health Policy Board*, 983 S.W.2d 459, 465 (Ky. 1998). In order to effectively argue that claim preclusion is appropriate, one must show: (1) identity of the parties; (2) identity of the causes of action; and (3) a resolution on the merits of the previous action. *Jellinick v. Capitol Indem. Corp.*, 210 S.W.3d 168, 170 (Ky. App. 2006). The Plaintiffs argue that the Court's analysis and application of the first factor, identity of the parties, was erroneous.

While it is certainly true that there is not an actual identity of the parties as the Plaintiffs and Dr. Jakobson are different entities, the factor can be satisfied through a finding of privity between Wayne County Hospital and Dr. Jakobson. *See BTC Leasing, Inc. v. Martin*, 685 S.W.2d 191, 197-98 (Ky. App. 1984). This is the finding the Court declined to make in its

2

previous Opinion [R. 61]. As the Court noted in that Opinion, the law in Kentucky is that:

> the concept of privity defies a precise, inflexible definition, a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity. This is to ensure that the interests of the party against whom res judicata has been asserted have been represented by his purported privy at the initial trial of the cause of action.

*BTC Leasing*, *Inc.*, 685 S.W.2d at 198 (citation omitted). The key thing to note is that privity cannot be easily defined. It depends on the facts in each individual case. The Plaintiffs rely on the fact that in the prior action, there was, for the Plaintiffs, an "incentive for vigorously defending Ms. Hardwick's claims, and necessarily Dr. Jakobson's interests," [R. 65, 5], but this alone does not mean that the parties are in privity. "[T]he mere fact that two parties are interested in proving or disproving the same facts will not create privity." *Id.* (citing *Newark Ins. Co. v. Bennett*, 355 S.W.2d, 303, 304 (Ky. 1962)).

The point of requiring privity is to ensure that the individual sought to be bound by the earlier proceeding to which he was not a party to, is guaranteed that his rights were adequately protected. *See BTC Leasing, Inc.*, 685 S.W.2d at 198. It would be unfair to require a person to be responsible for a judgment in which he was not a party to the litigation unless there is an *absolute* identity of interests. As the Court noted in its earlier Opinion, there were two "good results" for the Plaintiffs in the earlier case: (1) a finding that no parties were negligent; and (2) a finding that only Dr. Jakobson was negligent. In the case of a finding of negligence for only Dr. Jakobson, the Plaintiffs were aware that they could seek possible indemnification from Dr. Jakobson [*See* R. 61, 9]. Because of that, the Plaintiffs simply did not have the same incentive to vigorously defend the claim against Dr. Jakobson; they thought they may have a "way out" even if they lost.

The importance of being a party and having the ability to manage one's own defense is recognized by the Plaintiffs. A vice president for one of the Plaintiffs stated in her deposition, that, "the problem when you tender [your defense to third party physicians like Dr. Jakobson], you lose all control, particularly early. . . . So it really wasn't our practice to tender because *if we had exposure on it, we still wanted to keep control of it*." [R. 76, 8-9] (emphasis added). Being able to maintain control over a defense in which one has exposure is the exact right that Dr. Jakobson seeks. The vice president's statement shows that the Plaintiffs should understand that one who is subject to liability should have the right to mount and control his own defense.

Furthermore, the statement is also evidence that, as far as the Plaintiffs were concerned at the time, allowing Dr. Jakobson to have input in the defense may result in interests that were not those of the Plaintiffs being given emphasis in the proceeding. In other words, Dr. Jakobson's interests were not in absolute conformity with the Plaintiffs' interests because the Plaintiffs were concerned that including Dr. Jakobson would harm the Plaintiffs' defense. If the parties' interests had been in conformity, then this would not have been a great concern.

Plaintiffs also argue that the Court relied too heavily in its prior Opinion on the Missouri case of *SSM Health Care St. Louis v. Radiological Imagining Consultants, LLP,* 128 S.W.3d 534 (Mo. Ct. App. 2003). This case was cited as additional support, not as controlling precedent. The Plaintiffs argue that the case is factually distinguishable because, in the Missouri case, the defendants in that initial action had an incentive to shift fault whereas they did not in the underlying trial in this case. Despite the Plaintiffs' argument, the Missouri case remains factually analogous. The Plaintiffs argue that "Dr. Jakobson's negligence was the only issue involved in the [prior] litigation and Wayne County Hospital was not faced with the situation of having to defend the actions of its own employees." [R. 65, 6]. If this were true, then Wayne

4

County would not have been required to move for a directed verdict in the prior trial seeking to absolve all hospital employees or agents other than Dr. Jakobson [*See* R.1 Attach. 4, ex. 2]. Prior to that directed verdict, the Plaintiffs had an interest in shifting blame, if found, to Dr. Jakobson and away from its other agents. Dr. Jakobson, of course, would have had an interest in shifting blame, if found, to anyone other than himself. Thus, the fact remains that while the parties' interests were similar, there was not an "absolute identity of legal interests" between them as the law requires to find privity. *See BTC Leasing*, *Inc.*, 685 S.W.2d at 198 (citation omitted).

The Plaintiffs cite case law to support its argument that "there is privity between an indemnitee and indemnitor so long as the indemnitor is given notice of the claim against the indemnitee and an opportunity to participate in its defense." [R. 65, 3] (citing *Middlesborro Home Tele. Co. v. Louisville & N.R. Co.*, 284 S.W. 104, 108 (Ky. 1929). While it is true that indemnitors and indemnitees can stand in privity to each other, *see Vulcan, Inc. v. Fordees Corp.*, 658 F.2d 1106, 1110 (6th Cir. 1981), the Plaintiffs argue for an inflexible application of a privity rule, but "privity defies a precise, inflexible definition." *BTC Leasing*, *Inc.*, 685 S.W.2d at 198 (citation omitted); *see Vulcan, Inc.*, 658 F.2d at 1109 ("'Privity' is an ambiguous term . . . ."). For the foregoing reasons, the parties' interests, in this case, were not such that the parties satisfy the requirements for finding that they were in privity to each other. Thus, the Court has not been persuaded to depart from its earlier finding that the Plaintiffs "and Dr. Jakobson shared such an identity of interests as to create privity." [R. 61, 9].

**B.**

Plaintiffs ask, in the alternative to their Motion to Reconsider, for the Court "clarify and narrow the scope of the issues that must be re-litigated." [R. 65, 2]. Specifically, the Plaintiffs

ask that the issue of whether, and to what extent, damages should be fixed based on the prior action. The Court agrees that clarification is necessary. The Plaintiffs' action is one for indemnity. "[T]he right to indemnity is of common law origin and is available to one exposed to liability because of the wrongful act of another . . . ." *Degener v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000).

The state court judgment in the prior case makes plain that the Plaintiffs were only exposed to liability because of the jury's finding of negligence on the part of Dr. Jakobson [R.1 Attach. 4, ex. 2]. The jury interrogatory that was ultimately answered in the affirmative asks only about negligence as it relates to Dr. Jakobson (of course, this was after the court issued a directed verdict on the question of other hospital agents' negligence) [*Id.*] Thus, the current case is clearly one that fits within the definition of indemnity because the only basis of the judgment to which the hospital was subject to was the "wrongful act" of Dr. Jakobson.

The measure of damages in indemnity cases is the amount the Plaintiff "was required to pay for injuries sustained by another and which were entirely or primarily caused by the party against whom indemnity is sought." *Degener*, 27 S.W.3d at 781-82. The Plaintiffs cite case law stating that indemnity shifts "the entire loss from one tort feasor who has been compelled to pay it to the shoulders of another who should bear it instead." *V.V. Cooke Chevrolet, Inc. v. Metropolitan Trust Co.*, 451 S.W.2d 428, 430 (Ky. 1970).

The language in these cases consists of the words "entirely or primarily caused" by another and "another who should bear it." The question of who caused the damages paid by the Plaintiffs and who should bear that cost is essentially the question of liability. Because of the Court's prior analysis, *see supra* Part II.A, the question of liability, including proper proportionment of fault, is a question Dr. Jakobson has the right to litigate. In other words, Dr.

6

Jakobson should not be foreclosed, while making his defense, from the opportunity to shift fault to other potential tortfeasors.

The Court agrees with the Plaintiffs, however, that the total amount of potential damages is fixed at the amount the Plaintiffs have paid to satisfy the prior judgment. Because a claim for indemnity is one where the Plaintiff is essentially trying to get the money back that he already paid, *see Degener*, 27 S.W.3d at 780-81, the amount of total damages is set at that amount. That does not mean, however, that the parties are playing an all-or-nothing game in this litigation. It is merely a benchmark.

Part of the right to control one's own defense is the right to argue that fault should be apportioned. Thus, if Dr. Jakobson is ultimately held to be 100% responsible for the damage suffered by the Hardwicks[1], then he will have to fully indemnify the Plaintiffs. If Dr. Jakobson is determined to be responsible for only 70% of the damages suffered by the Hardwicks, then Dr. Jakobson's liability will be 70% of the judgment in the previous state court action. The Court is aware that this creates the risk of inconsistent judgments, but as the Court stated in its previous Opinion, "such a situation [was] easily avoided" [R. 61, 15] and it was within the Plaintiffs' power to do just that by joining Dr. Jakobson in the prior action. Furthermore, "equity and fairness dictate that the Hospital must bear the risk of potentially inconsistent results." [R. 61, 15] (citing *BTC Leasing*, 685 S.W.2d 191).

### III.

Finally, the Plaintiffs ask this Court to certify its Order for immediate appeal under 28 U.S.C. §1292(b) which states:

> When a district judge, in making in a civil action an order not

---

[1] The Plaintiffs in the previous state court action.

> otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. §1292(b). Breaking the statutory language down, there are three requirements a movant must show in order for a court to grant his motion making an order immediately appealable: (1) the order must contain a controlling question of law; (2) there must be a substantial ground for difference of opinion as to that question of law; and (3) there must be a possibility that an immediate appeal from the order would materially advance the ultimate termination of the litigation. *Id*.

The question of law that the Plaintiffs seek to have certified is "the resolution of the res judicata issue" [R.65, 12] but the real issue is really much narrower than that. The relevant question of law to apply the 28 U.S.C §1292(b) language to is whether the doctrine of privity in the claim preclusion context was properly decided. For the privity question to be a "controlling" question of law, the only showing which must be made "is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Baker & Getty Financial Services, Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992) (citing *In re Cement Antitrust Litigation*, 673 F.2d 1020, 1026 (9th Cir. 1981).

Dr. Jakobson argues that the test for finding a controlling question is not met because determining whether privity exists is a "mixed question of fact and law." [R.75, 23]. Dr.

8

Jakobson is mistaken. While finding privity depends on the facts in each case, privity is a legal concept and a question of law. Questions of law always rely on an application of facts, and simply stating that a factual inquiry is required is not enough to effectively argue that a question of law is not present. Furthermore, the issue of privity is "controlling" because a finding of its existence would satisfy the claim preclusion requirement of "identity of parties." *See BTC Leasing, Inc. v. Martin*, 685 S.W.2d 191, 197-98 (Ky. App. 1984). This is the only element of claim preclusion lacking in order to apply it in this case [*See* R. 61, 6-7]. Since a finding of claim preclusion would most likely terminate the litigation short of trial, the issue of privity would certainly "materially affect the outcome of the litigation" as required by 28 U.S.C. §1292(b). *In re Baker & Getty Financial Services, Inc.*, 954 F.2d at 1172 n.8.

The second requirement under 28 U.S.C. §1292(b) is a finding that there is a substantial ground for a difference of opinion about the existence of privity. By its nature, "the concept of privity defies a precise, inflexible definition . . . ." *BTC Leasing*, *Inc.*, 685 S.W.2d at 198 (citation omitted). As a result, there can sometimes be grounds for a difference of opinion about its existence. The Court is convinced that the parties' interests are too divergent to find privity, *see supra* Part II.A, but the Plaintiffs' arguments are not completely without merit, particularly with respect to the question of the importance of controlling one's own defense compared to having the opportunity to participate in one's defense. Because privity is so imprecise, and because the Plaintiffs raise somewhat compelling arguments, the Court finds that substantial ground for a difference of opinion exists as required by 28 U.S.C. §1292(b).

The final requirement a court must find in order to certify a question under 28 U.S.C. §1292(b) is the possibility that an immediate appeal from the previous order would materially

9

advance the ultimate termination of the litigation. *Id*. The Court's previous Order found that claim preclusion did not exist in this case because of a lack of privity [R.61]. If the Court of Appeals disagreed and found that privity is present here, then all the requirements for claim preclusion would be present. If claim preclusion is appropriate, then the finding of Dr. Jakobson's negligence and proportional fault in the prior action would preclude the current parties from re-litigating those issues as well as any other issue that actually was raised or could have been raised in the prior action. *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995). Because these issues could no longer be litigated, a finding of privity now would almost certainly advance the ultimate termination of the current litigation as required by 28 U.S.C. §1292(b). As a result, the Court finds all three requirements necessary under 28 U.S.C. §1292(b) for immediate appeal of an interlocutory order present in this case.

### IV.

For the reasons above, it is hereby **ORDERED** as follows:

1. The Plaintiffs' Motion to Reconsider [R. 65] is **DENIED;**

2. The Plaintiffs' Motion to Make the Prior Order Appealable [R. 65] is **GRANTED** as the Court finds the requirements to do so under 28 U.S.C. §1292(b) are present in this case. The appealable Order and Opinion are found at docket entries 60 and 61;

3. The proceedings in this District Court are hereby **STAYED,** pending the Court of Appeals' discretionary review of whether to consider the issue, and if then considered by the Court of Appeals, until that Court's ruling on Plaintiffs' Motion**;**

4. Plaintiffs' Motion for a Pretrial Conference [R. 80] is **DENIED.**

This the 29th day of September, 2011.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge