UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

|  |  |  |
|---|---|---|
| WAYNE COUNTY HOSPITAL, INC., ET AL., Plaintiffs, | ) ) ) ) | Civil No. 09-44-GFVT |
| V. | ) ) | |
| PEETER JAKOBSON, M.D., Defendant. | ) ) ) ) | **MEMORANDUM OPINION & ORDER** |

*** *** *** ***

Wayne County Hospital, Inc. and Ohio Hospital Insurance Company claim that they were compelled to pay a former patient for damages resulting from the primary negligence of Dr. Jakobson in August of 2000.  Now, after over a decade of litigation, the hospital and its insurance company continue their attempts to recoup those damages.  Toward that end, the Plaintiffs have filed a motion for leave to amend their complaint, a motion to exclude an expert, and a motion for partial summary judgment.  Dr. Jakobson has opposed all three.  Each of these motions, at least in some way, relate to the law governing ostensible agency and indemnity.  The Court, having considered the arguments of the parties and reviewed the relevant case law, now holds that the motion for partial summary judgment and the motion to exclude shall be GRANTED, while the motion for leave to amend the complaint shall be GRANTED in part and DENIED in part.

I

Though the relevant facts of this case remain largely undisputed, the Court once again

sets them forth as updated since its previous Order denying summary judgment.  In August 2000, Linda Hardwick had a mammogram performed at Wayne County Hospital.  Dr. Jakobson, who provided radiology services to the Hospital's patients and maintained his office in the Hospital's radiology department, read the mammogram.  Although that mammogram revealed a small mass in Mrs. Hardwick's right breast, Dr. Jakobson did not believe any additional follow up beyond her annual check up was necessary.  The report of the mammogram stated that the results were "NORMAL/NEGATIVE" with "[n]o evidence of cancer" and noted that "[t]he breasts remain stable without evidence for malignancy."  [R. 41, Ex. 1.]  The report was signed by Dr. Jakobson and sent by the Hospital to Mrs. Hardwick along with a letter, also signed by Dr. Jakobson, printed on Wayne County Hospital letterhead.  [*See* R. 41, Ex. 2.]

Mrs. Hardwick returned to Wayne County Hospital the following August for her yearly mammogram.  Dr. Jakobson also signed this report.  The August 2001 Report provided as follows:

> FINDINGS: The nodule seen on the previous mammogram in the right breast in the upper outer quadrant has markedly enlarged and is suspicious for CA.  Biopsy should be considered.  The remaining breasts are stable without skin thickening, nipple retraction, pathologic calcifications, or new discreet masses.  The nodule previously was approximately 8 mm in diameter and presently is 10 mm in diameter indicating significant increase in volume of the mass.
>
> IMPRESSION: BI-RADS CATEGORY IV, SUSPICIOUS 10 MM MASS IN RIGHT BREAST, INCREASED IN SIZE FROM 8 MM IN 1 YEAR.  BIOPSY SHOULD BE CONSIDERED FOR FURTHER EVALUATION.

[R. 41, Ex. 3.]  This report was sent to Mrs. Hardwick in the same manner as the previous one.  The letter accompanying this report, however, advised Mrs. Hardwick that the results were "ABNORMAL" and that she "should contact [her] physician or primary care provider *as soon as possible*."  [R. 41, Ex. 4 (emphasis in original).]

Mrs. Hardwick subsequently had a biopsy of the mass, which was determined to be Stage 1 invasive carcinoma. She then had a mastectomy and reconstructive surgery and underwent hormonal oral therapy treatment. On August 1, 2002, Mrs. Hardwick and her husband filed suit against Wayne County Hospital in Wayne Circuit Court. The Complaint alleged the Hospital, acting by and through its agents and ostensible agents, was negligent in performing and/or reading the mammogram performed on August 1, 2000. The Complaint also included a claim for loss of consortium on behalf of Mr. Hardwick. Notably, the Complaint did not name Dr. Jakobson as a defendant and neither the Hospital nor its insurer sought to join him.

The case proceeded to trial in February 2006. At the close of all the evidence, the court granted two motions for directed verdict. Granting the Hospital's motion, the court found insufficient evidence of negligence of any other employees or agents. Granting the Hardwicks' motion, the court found that Dr. Jakobson was an ostensible agent of Wayne County Hospital. The jury subsequently returned a verdict for the Hardwicks, awarding them $828,520.00 plus costs and interest on their claims, and judgment was entered consistent with that verdict.

The Hospital appealed to the Kentucky Court of Appeals. That court affirmed the Wayne Circuit Court's Judgment, and the Kentucky Supreme Court denied the Hospital's motion for discretionary review. Pursuant to its obligations under the insurance policy issued to Wayne County Hospital, OHIC paid $1,052,952.94 to the Hardwicks to satisfy the Judgment.

The Hospital and OHIC then filed the instant suit seeking indemnification and subrogation from Dr. Jakobson for the amount paid to the Hardwicks. The Plaintiffs allege that those damages were the direct and proximate result of Dr. Jakobson's negligent failure to meet the standard of care owed to Mrs. Hardwick. And, because the Hospital was only vicariously liable due to its ostensible agency relationship with Jakobson, the Hospital asserts that Jakobson

must indemnify it.

The Plaintiffs initially sought summary judgment on the basis that claim and issue preclusion barred relitigation of the issues of the first trial.  After substantial briefing and argument, the Court found that there was no privity between the parties at the earlier state court action and denied the motion for summary judgment.  [R. 61; R. 99].  Though the Sixth Circuit found this issue improper for certification, it received reconsideration by this Court, and the issue of privity has now been finally decided for the purposes of litigation at the district court level. The parties were ordered to continue with discovery, which the Court declined to proactively limit.

Now pending before the Court are three motions of the Hospital Plaintiffs, who seek to amend their complaint, exclude a defense expert, and receive partial summary judgment.  The issues of these motions are, however, bound up in similar issues of law concerning ostensible agency and indemnity.  Therefore, the Court shall clarify those legal concepts and address each of the three motions herein.

II

A

When sitting in diversity, a federal court applies the substantive law of the state in which it sits.  *Hayes v. Equitable Energy Resourcs Co*., 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941)).  However, when considering the issue of summary judgment, a federal court applies the standards of Fed.R.Civ.P. 56 rather than "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr. Inc*., 807 S.W.2d 476 (Ky. 1991)." *Gafford v. Gen. Elec. Co*. 997 F.2d 150, 165 (6th Cir. 1993).  Under Rule 56, summary judgment is appropriate where "the pleadings, depositions, answers to

4

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The burden is initially on the moving party to inform "the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of a material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party may make this showing by demonstrating the absence of evidence to support one of the essential elements of the nonmoving party's claim. *Id*. at 322-25.  Once this burden is met, the nonmoving party, "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56.  Further, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, "the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

B

Though the Hospital Plaintiffs' motion for summary judgment does not seek final disposition of the case, it does ask the Court to rule as a matter of law that "if Defendant Peeter

5

Jakobson, M.D. is found negligent, he is liable to the Plaintiffs for the amount of the judgment rendered in Linda and Alvin Hardwick's previous suit against the Plaintiffs." [R. 112-1 at 1]. That is to say, the Hospital plaintiffs seek a judicial determination that if Dr. Jakobson is found negligent, they can recover in indemnity.

"Indemnity…is simply the repayment to one party by another party who caused the loss of such amounts the first party was compelled to pay." *Hall*, No. 05-185-JBC, 2007 WL 1385943 at *1 (quoting *Liberty Mut. Ins. Co. v. Lousiville & Nashville R.R. Co.*, 455 S.W.2d 537, 541 (Ky. 1970). Indemnity is "available to one exposed to liability because of the wrongful act of another with whom he/she is not in pari delicto." *Degener*, 27 S.W.3d at 780. Under these standards, the Plaintiffs have argued that indemnity is appropriate because they were required to pay damages in their state trial due to their ostensible agency relationship with Dr. Jakobson, with whom they were not in pari delicto.

Under Kentucky law, a hospital may be held vicariously liable for the acts of non-employees and independent contractors who are found to be its ostensible agents acting under apparent authority. *Williams v. Ky. Dep't of Educ.*, 113 S.W.3d 145, 151 (Ky. 2003); *see also*, *Grubb v. Norton Hospital*, 2010 WL 27877982, at *6 (Ky.Ct.App July 16, 2010)(review granted). "An apparent or ostensible agent is one whom the principle, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either by expressly or by implication, conferred authority upon him." *Vandevelde v. Poppens*, 552 F.Supp.2d 662, 666 (W.D.Ky. 2008) (citing *Middleton v. Frances*, 77 S.W.2d 425, 426 (Ky, 1934)). In discussing ostensible and apparent agency, the Kentucky Supreme Court has expressly adopted the teachings of the Restatement (Second) of Agency § 267 (1958):

> One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such.

*Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 257 (Ky. 1985) (citing Restatement (Second) of Agency § 267 (1958). *See also, Roberts v. Galen of Virginia Inc*., 11 F.3d 405, 412 (1997); *Dierig v. Lees Leisure Industries, Ltd*., 2012 WL 669968, at *4 (E.D.Ky Feb. 28, 2012).

In Kentucky's seminal case on ostensible agency, *Paintsville Hospital Company v. Rose*, the Supreme Court set forth the circumstances under which it would find that someone who was not an employee of the hospital an ostensible agent for the purpose of vicarious liability. 683 S.W.2d at 258. The Supreme Court stated that it would be "unreasonable to put a duty on the patient to inquire of each person who treats him whether he is an employee or independent contractor of the hospital." *Id*. Instead, citing two courts from sister states, the Supreme Court of Kentucky held as follows:

> "Absent notice to the contrary, therefore, plaintiff had the right to assume that the treatment received was being rendered through hospital employees and that any negligence associated with that treatment would render the hospital responsible." *Arthur v. St. Peters Hospital, 169 N.J.Super*. 575, 405 A.2d 443, 447 (1979).

> "In our view, the critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems." *Grewe v. Mt. Clemens General Hospital*, 404 Mich. 240, 273 N.W.2d 429, 433 (1978).

*Id*. *See also Roberts*, 11 F.3d at 412. The Sixth Circuit has noted that under this standard, "the actions of the hospital, rather than the knowledge of the patient, is controlling in a case where the patient is unable to obtain actual knowledge of hospital's disclaimer." *Roberts*, 11 F.3d at 412. Therefore, a hospital who has clearly attempted to alert the public that its physicians are not

employees or agents of the hospital, will not subsequently have those persons deemed ostensible agents by the court. *Id.*

Considering this legal background, the arguments of the parties swim upstream. As noted by Dr. Jakobson, the Hospital Plaintiffs unsuccessfully argued at the *Hardwick* state court trial that Dr. Jakobson was, in fact, not their ostensible agent and therefore, as a matter of law, they could not be held vicariously liable for his actions. [R. 109 at 5]. This is the more common manner in which the ostensible agency issue arises. Generally, a plaintiff (such as Hardwick) has brought suit against a hospital (such as Wayne County Hospital), who in turn tries to argue that it may not be held vicariously liable for the acts of a particular doctor (such as Dr. Jakonson), because he is an independent contractor and not an ostensible agent.

Though the Hospital Plaintiffs made and lost this argument in the *Hardwick* case in state court, as has been well established, the slate has been wiped clean in this case and the Hospital Plaintiffs are free to assert the counter position in this indemnity action. [R. 99]. Specifically, the Hospital Plaintiffs set forth the following facts in support of their position that they held Dr. Jakobson out as their ostensible agent:

> Here, the Hospital did not distinguish Dr. Jakobson as anything other than a Hospital employee. The Hospital provided radiological services exclusively through Dr. Jakobson, marketed his services to patients through Hospital physicians, provided Dr. Jakobson an office in the radiology department of the Hospital, and required him to work regular hours there. To have Dr. Jakobson read her mammogram, Linda coordinated her visits through the Hospital Staff, and a Hospital-employed radiology technician administered Linda's mammograms using Hospital-owned equipment. The Hospital then sent Hardwick a letter on Hospital letterhead providing Dr. Jakobson's evaluation and signature, but stating "*we* wish to report the following on your mammography examination." To create this letter, Dr. Jakobson merely dictated his evaluation to a Hospital staff member for drafting. Until she confronted Dr. Jakobson about his negligence, Linda never met Dr. Jakobson and instead relied solely upon the Hospital to arrange her mammograms and inform her of the results.

Additionally, unlike in *Grubb*, *Floyd* or *Vandevelde*, the Hospital never provided Linda any written notification Dr. Jakobson was not a Hospital employee. At best, she was only verbally notified that Dr. Jakobson and the Hospital would bill her separately for their services. Dr. Jakobson's fee schedule with the Hospital, however, was never disclosed and the Hospital never explained this separate billing arrangement to Linda in writing. Outside of this billing information, the Hospital never informed Linda—either verbally or in writing—that Dr. Jakobson was not a Hospital employee.

[R. 112-1 at 7-8]. Under these circumstances, it would seem that the actions of the hospital would be insufficient to overcome the presumption that "the treatment received was being rendered through hospital employees and that any negligence associated with that treatment would render the hospital responsible." *Paintsville Hosp. Co*., 683 S.W.2d at 258.

Interestingly, Dr. Jakobson and his expert, Dr. Charles A. Pietrafesa, M.D., agree with this conclusion. In Dr. Piestrafesa's report, he states that "the failure of WCH to actively and explicitly notify Ms. Hardwick of the independent nature of the relationship [between WCH and Dr. Jakobson]," would have "undoubtedly supported an ostensible agency determination." [R. 104-9 at 5]. After citing many of the same facts as recognized by the Hospital Plaintiffs, Dr. Piestrafesa's report states decisively, "[w]ithout notice to the contrary, even though the relationship of Dr. Jakobson to WCH was similar to that of hospital-based radiologists across the country, it is not unreasonable for Mrs. Hardwick to have assumed a dependent affiliation or what was determined by the Court to be an (ostensible) agency relationship." [R. 104-9 at 7]. Further, in his response to the Hospital Plaintiffs' motion for summary judgment, Dr. Jakoson sets forth no facts that demonstrate he was not WCH's ostensible agent. Thus, as a general matter, there is no dispute of material fact that Dr. Jakobson was the ostensible agent of Wayne County Hospital.

9

However, though there remains no factual dispute on this point, Dr. Jakobson does oppose the Hospital Plaintiffs' motion for summary judgment on legal grounds. It is critical that this counter argument be clearly set forth and addressed because its misconception of the law of ostensible agency not only militates against Dr. Jakobson's opposition to the motion for summary judgment, but also his response in opposition to exclude his expert. Specifically, Dr. Jakobson states:

> In light of this Court's ruling, however, that Dr. Jakobson is entitled to litigate for himself all issues – including the idea of ostensible agency – Plaintiffs assert that they are now required to argue against themselves that the facts of this case are sufficient to establish a finding that they are liable in ostensible agency. Although they deftly avoid any admission that the Hospital negligently or, worse yet, intentionally misrepresented the status of the doctors who would be treating its patients, to impose an ostensible agency the jury must necessarily find some culpable misconduct in that regard.

[R. 113 at 10]. Dr. Jakobson also states, "any finding of an ostensible agency necessarily means that the Hospital misled Linda Hardick to her detriment, thereby destroying any right to indemnity." [R. 113 at 11]. He adds that, "'ostensible agency' is but a policy choice to impose liability on one as an 'ostensible principle' because of its own negligent or intentional misconduct." [R. 113 at 12]. He also refers to actions "sounding in ostensible agency" and parties being "liable in ostensible agency." [R. 133 at 12-13].

Though many of these conclusions appear to be original to Dr. Jakobson, on some occasions he cites *Middleton v. Frances*, 77 S.W.2d 425, 426 (Ky. 1934) and *Williams v. St. Claire Medical Center*, 657 S.W.2d 590 (Ky.Ct.App. 1983) as support for his propositions. In *Middleton*, a passenger in a taxi cab sued the taxi company for damages resulting from a driver's negligence. 77 S.W.2d at 425-426. The taxi company claimed that it could not be liable for the driver's negligence because he was not their employee. *Id.* The Court then considered whether the doctrine of ostensible agency could impute negligence to the taxi company though the driver was

10

not its agent.  In describing the doctrine, the court noted that "[a]n apparent or ostensible agent is one whom the principle, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, although he has not, either by expressly or by implication, conferred authority upon him."  *Id*. at 426.  Dr. Jakobson hones in on the words "intentionally or by want of ordinary care" to imply that liability arises from the ostensible agency relationship itself.

However, ostensible agency is not a cause of action for which Wayne County Hospital could be found liable, but is merely a doctrine determining whether an entity could be held liable for a separate harmful act of another.  Speaking of ostensible agency, the Kentucky Court of Appeals noted that, "[t]his doctrine does not, however, create a 'separate and distinct' duty on the hospital…[t]he sole duty imposed on the hospital by this ostensible agency is through its employee and staff, including independent staff personnel, to exercise appropriate care to provide for the patient's wellbeing and to promote his cure."  *Copeland v. Humana of Kentucky, Inc*., 769 S.W.2d 67, 69 (Ky.Ct.App, 1989).  Said differently, though the hospital does not incur liability when its actions render an independent contractor an ostensible agent, the fact that the independent contractor is an ostensible agent might allow a plaintiff to hold a hospital liable for that independent contractor's negligence when it otherwise would not have had such obligation.

The cases cited by Dr. Jakobson are consistent with this conclusion rather than support his argument.  The taxi cab company in *Middleton* was not sued for ostensible agency, but the plaintiff sought to pin the driver's negligence on the company through the doctrine of ostensible agency.  77 S.W.2d at 425-426.  In *Williams*, nurse Ed Johnson improperly administered anesthesia to the plaintiff, rendering him in a coma for nearly two weeks.  The plaintiff did not argue that the hospital was liable in ostensible agency, but that "the hospital is vicariously liable

11

for the tortious acts of Johnson under the theory of ostensible agency, frequently referred to by the courts as the doctrine of apparent authority." *Williams*, 657 S.W.2d at 596. The Kentucky Court of Appeals went on to find that through the doctrine of ostensible agency, the hospital was liable for the separate negligence of the nurse who was otherwise an independent contractor. *Id.*

The standard in *Middleton* is not to suggest that when a hospital bestows apparent authority on its independent contractor, thereby making him an ostensible agent, it has committed negligence or an intentional tort. The standard is just another way of saying that either the intentional or accidental actions of the hospital can create an apparent agency, though the principal has not undertaken steps to give that agent actual authority. Wayne County Hospital could no more be sued in or found liable for ostensible agency than a state could be sued in sovereign immunity or a corporate entity be found liable for piercing the corporate veil. This is because these concepts are merely doctrines determining whether an entity could be held liable for an underlying substantive cause of action. No matter how much Dr. Jakobson argues and no matter how many experts he brings in to support his claim, the underlying cause of action that is relevant to this case is not ostensible agency or even negligent misrepresentation. The jury will not be asked to find who was negligent in causing Mrs. Hardwick to believe that Dr. Jakobson was an employee of the hospital. Instead, the key inquiry here is who, if any one, was negligent in reading and/or reporting of the mammogram performed on August 1, 2000.

Therefore, Dr. Jakobson shall be permitted to persuade the jury that WCH's negligence, rather than his own, gave rise to the injuries to Mrs. Hardwick, but not that the presence of an ostensible agency relationship is somehow negligent. As to the issue of ostensible agency, all parties are in agreement such that there is no factual disagreement to be resolved. "Where facts are in dispute and the evidence is contradictory, the question of agency, like other questions of

12

fact is to be determined by a jury.  However, where the facts are undisputed, the question becomes of law for the Court."  *Wolford v. Scott Nickels Bus Co.*, 257 S.W.2d 594, 595 (Ky.Ct.App. 1953).  Thus, the Court finds that, as a matter of law, an ostensible agency relationship existed between Wayne County Hospital and Dr. Jakobson.

C

Wayne County Hospital and OHIC further argue that based on this ostensible agency relationship, the Court can find as a matter of law that indemnity is appropriate under these circumstances because WCH was not in pari delicto with Dr. Jakobson.  Dr. Jakobson counters that the Hospital Plaintiffs may not recover in indemnity because they were volunteers in the previous action and because the facts and circumstances of this case demonstrate that WCH and Dr. Jakobson were in pari delicto.  The fight over whether the parties were in pari delicto is essentially about whether this is a case where contribution and apportionment are appropriate, such that WCH must remain liable for any portion of the fault allocated to them by the jury, or whether this is a case where indemnity is the applicable remedy, such that the WCH's entire liability from the previous case  may be shifted to Dr. Jakobson if he is found negligent.

The Kentucky Supreme Court addressed the relationship among contribution, apportionment and indemnity in *Deneger v. Hall Contracting Corp.*, 27 S.W.3d 775, 778 (Ky. 2000).[1]  Therein, the Court stated that contribution and indemnity "represent separate and distinct remedies which have different historical origins and are applicable to completely different fact situations." *Id.* at 778.  "The right to contribution arises when two or more joint

---

[1] In *Deneger*, the Kentucky Supreme Court consolidated two similar cases for the purposes of the decision. Procedurally, the trial court in both cases had dismissed the third-party complaint predicated on indemnity.  The Supreme Court decided as a matter of law that the parties were in pari delicto such that complete indemnity was appropriate and then remanded the case back to the trial court for resolution on the merits.  27 S.W.3d at 777-78, 781-82.

tortfeasors are guilty of concurrent negligence of substantially the same character which converges to cause the Plaintiff's damages.  In that scenario, the torfeasors are said to be in pari delicto."  *Id*.  The Kentucky Supreme Court also recognized that the apportionment procedures codified in KRS 411.182 "replaced a subset of contribution claims," and as a result, courts in this district have considered apportionment, like contribution, to be mutually exclusive with indemnity.  *Texas Capital Bank, N.A. v. First American Title Ins. Co*., No. 09-CV-661-H, 2012 WL 443460, at *2 (W.D.Ky. Feb 10, 2012) (citing *Deneger*, 27 S.W.3d at 780).

As previously noted, under Kentucky law indemnity is "available to one exposed to liability because of the wrongful act of another with whom he/she is not in pari delicto." *Degener*, 27 S.W.3d at 780.  More specifically, under Kentucky law, indemnity is available in two types of situations:

> (1) Where the party claiming indemnity has not been guilty of any fault, except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment; or (2) where both parties have been in fault, but not the same fault, towards the party injured, and the fault of the party from whom indemnity is claimed was the primary and efficient cause of the injury.

*Id.* (quoting *Louisville Ry. Co. v. Louisville Taxicab & Transfer Co*., 77 S.W.2d 36, 39 (Ky. 1934)).

The classic case exemplifying a circumstance under which indemnity is appropriate is oft cited *Brown Hotel Co. v. Pittsburg Fuel Co.*, 224 S.W.2d 165 (Ky. 1949)(cited favorably by *Lahutsky v. Wagner*, No. 5:10–CV–00007–R, 2011 WL 5597330, at *14 (W.D.Ky Nov. 17, 2011)).  In *Brown,* a pedestrian was injured when an employee of the defendant fuel company left a manhole cover loose on the hotel's premises. *Id.* at 166. At trial, the verdict against the hotel and the fuel company specified that they should each pay half of the judgment. *Id.* The

14

hotel later sought indemnity from the fuel company. *Id.* at 165.   The fuel company argued that the indemnity action was inappropriate under the circumstances.  The Kentucky Court of Appeals first noted generally that:

> Where one of two parties does an act or creates a hazard and the other, while not concurrently joining in the act, is, nevertheless, thereby exposed to liability to the person injured, or was only technically or constructively at fault, as from the failure to perform some legal duty of inspection and remedying the hazard, the party who was the active wrongdoer or primarily negligent can be compelled to make good to the other any loss he sustained.

*Id* at 403.  Then, in applying that principal to the facts at issue in Brown, the Kentucky Court of Appeals reasoned:

> The primary, efficient and direct cause of the accident was the positive antecedent negligence of the fuel company's employee in failing to replace the manhole lid securely. This exposed the hotel company to liability. Its fault was a negative tort in failing to check upon the act of the coal delivery man and in failing to observe its affirmative duty to the public to see that the way was free of obstruction or the pitfall. Both were in fault but not the same fault toward the party injured. The employees of the two companies were not acting jointly or concurrently or contributorily in committing the tort. They were not in pari delicto.

*Id*. at 167.

In both *Brown Hotel* and *Deneger* the Court determined that under the facts at issue the parties were not in pari delicto.  *Id*.  *See also*, *Degener*, 27 S.W.3d at 780.  The practical effect of a Court's finding that parties are not in pari delicto such that indemnity is an appropriate remedy is that, upon a finding of negligence, the entire loss is shifted "from one tort feasor who has been compelled to pay it to the shoulders of another who should bare it instead."  *V.V. Cooke Chevrolet Inc. v. Metropolitan Trust Co.*, 451 S.W.2d 428, 430 (Ky.Ct.App. 1970).  Therefore, apportionment of liability "has no application to the common law right of indemnity from the primarily liable party with whom he/she is not in pari delicto."  *Deneger*, 27 S.W.3d at 780.

15

Dissenting in *Deneger*, Judge Keller was critical of the court's conclusion on apportionment and indemnity, claiming the analysis was unworkable and that the implied equitable indemnity concept was an "anachronism" that should have been made "extinct" by the passage of KRS 411.182. *Id*. at 786. Claiming agreement with the modern trend of courts, the *Deneger* Dissent called implied indemnity "a blunt instrument for reallocating responsibility to damages [which] shifts the entire loss from one culpable wrongdoer to another." *Id*. (citations omitted). He then criticized the malleability of the *Brown Hotel* distinction between "active" and "passive" negligence:

> With a little ingenuity in phrasing, negligence can be made to be either "active" or "passive" as suits the writer. For example, "driving an automobile with bad brakes" or "running through the stop sign" or "using a defective crane" might be said to be "active" negligence, while "omitting maintenance of brake fluid level" or "neglecting to apply the brakes" or "failing to inspect the crane in order to discover its defectiveness" might be "passive" negligence——these are the same acts or omissions, but the outcome depends not upon the facts, but upon how someone chooses to characterize them.

*Id*. at 785 (Ky. 2000). The Dissent then notes that "active" and "passive" negligence should remain relevant only to the extent that the jury considers them in accessing apportionment of fault between the parties. *Id*. (citing *Schneider National Inc., v. Holland Hitch* Co., 843 F.2d 561 (Wyo. 1992)).

However, Judge Keller's view that indemnity and the analysis used to determine its applicability should be considered consumed by comparative fault and jury apportionment did not carry the day. Thus, under Kentucky law, the nature of the negligence of the parties remain relevant, because if the only negligence attributable a party is passive, secondary, or technical, the parties cannot be said to be in pari delicto and an indemnity claim may therefore be appropriate. And though an in pari delicto determination might depend on some issue of fact

16

that must be resolved by a jury, as illustrated by both cases decided in *Deneger*, that determination may be, and often is, made by the Court as a matter of law.[2]

As previously outlined in the factual recitation, the underlying negligence in question centers on the mammograms of Mrs. Hardwick.  Dr. Jakobson, who provided radiology services to the Hospital's patients and maintained his office in the Hospital's radiology department, read an initial mammogram in August 2000.  Although that mammogram revealed a small mass in Mrs. Hardwick's right breast, Dr. Jakobson did not believe any additional follow up beyond her annual check up was necessary.  The report of the mammogram stated that the results were "NORMAL/NEGATIVE" with "[n]o evidence of cancer" and noted that "[t]he breasts remain stable without evidence for malignancy."  [R. 41-1].  The report was signed by Dr. Jakobson and sent by the Hospital to Mrs. Hardwick along with a letter, also signed by Dr. Jakobson, printed on Wayne County Hospital letterhead.  [*See* R. 41-2].  Regrettably, upon Mrs. Hardwick's next yearly mammogram, Dr. Jakobson indicated abnormalities, requiring immediate follow-up. [R. 41-3].  That abnormality was later determined to be to be Stage 1 invasive carcinoma, for which Mrs. Hardwick received a mastectomy and reconstructive surgery and underwent hormonal oral therapy treatment.  Her complaint against the hospital claimed negligence in performing and/or reading the August 2000 mammogram.

---

[2] *See*, Palmore Instructions to Juries § 46.05.  Though not binding on the Court, Palmore Instructions to Juries §46.05 is instructive here, citing the two *Deneger* cases and providing a jury instruction illustrating, "the unusual situation where a claim for indemnity will turn upon an issue of fact."  Specifically, the proposed jury instruction is based on a modified version of the facts in *Brown Hotel* and was described in the commentary as follows: "Initially, the jury would have been instructed to find if the manhole was left uncovered for a sufficient period of time that the hotel should have discovered it, then the hotel is liable to the original plaintiff.  Indemnity would lie because the fuel company had left the manhole uncovered, thus causing the hotel's liability.  However, had hotel actually discovered the danger and failed to correct it, then its conduct would not have secondary and indemnity would not have been available."  It is worth noting even at this juncture that Dr. Jakobson maintains that his analysis and reporting related to the Hardwick mammogram was accurate, and he has alleged no facts that if it were not accurate that WCH was aware of such inaccuracies.

Wayne County Hospital claims that it not in pari delicto with Dr. Jakobson because it was held liable only for its passive relationship to Dr. Jakobson, who was the actively negligent party. [R. 112-1 at 10].  Dr. Jakobson counters that if the jury were to find him negligent, Wayne County Hospital must be considered to have been in pari delicto with him because it was actively negligent in failing to satisfy its affirmative obligations under the Mammography Quality Standards Act (MQSA).  Specifically, Dr. Jakobson states that "the federal government has placed extensive obligations on hospitals – separate and distinct from radiologists – in terms of the personnel performing and interpreting mammograms, affirmative obligations to": (1) have sufficient quality control and assurance measures in place; (2) initiate follow-up on and review mammograms taken prior to the diagnosis of a malignancy in any case where breast cancer subsequently becomes known to the facility; (3) designate at least one physician to review medical outcomes audit data at least once every 12 months and notify other physicians of their results; (4) provide quality control testing of equipment used to perform mammograms; (5) provide "the patient with a report couched in laymen's terms easily understood by non-medical professionals of the results of the mammogram," in conjunction with the radiologist; and (6) establish and maintenance of a quality assurance program to ensure the safety, reliability, clarity and accuracy of mammography services performed.  [R. 113 at 17-19, citing 21 CFR 900.12, et seq.].

In general, Dr. Jakobson's recitation of MQSA requirements essentially amounts to accusations that Whitley County Hospital negligently permitted unsafe or dangerous conditions to exist on its premises by failing to provide quality control mechanisms, conduct audits, or engage in review of reports.  However, when the Brown Hotel merely allowed the manhole cover, which was left negligently open by the gas company, to remain open on property that the

18

hotel had a duty to keep safe, Kentucky courts did not find it to be in pari delicto with the gas company. *Brown Hotel Co.,* 224 S.W.2d 167. The Kentucky Supreme Court found that construction company in *Deneger* was entitled to complete indemnity when its only negligence was in the manner in which it stored and maintained the dynamite that was stolen by two bomb makers, who constructed a bomb that injured three police officers. *Deneger*, 27 S.W.3d 781. In the companion case discussed in *Deneger*, when the hospital simply failed to prevent an act of sexual harassment from taking place in its facility, the court also found that it was not in pari delicto with the doctor who engaged in the harassment. *Id*. Considering the fact patterns at issue in *Deneger*, which in many respects are similar to this case, the Kentucky Supreme Court held as a matter of law that even if the construction company and the hospital were liable for damages incurred by the injured party, they were not in pari delicto with the actively negligent party and would therefore be entitled to complete indemnity from that party. *Id*.

The only MQSA requirement articulated by Dr. Jakobson that appears to constitute anything more than a duty to provide quality control, review, and audits so as to address a potentially unsafe condition existing on the premises of the hospital, is the requirement that "both the hospital and the radiologist are responsible for providing the patient with the report, couched in layman's terms easily understood by non-medical professionals, of the results of her mammogram." [R. 113 at 18].[3] In Dr. Jakobson's view, because there was a dual responsibility to provide the report, which was jointly provided by himself and WCH, the parties, if anything, are joint tortfeasors who were guilty of concurrent negligence of substantially the same character which converged to cause Mrs. Hardwick's damages. However, the potential fault of the parties

_____

[3] Dr. Jakobson cites no particular statutory section nor regulation to support this assertion, however, for the purposes of this analysis the Court shall assume that his representation is true.

in preparation and communication of the report are decisively not of the same type.  It may be true that the report was sent by the hospital, written on hospital letter head, and purported to be from both parties, but the alleged negligence here stems from the information contained in the report and the review of the mammogram that gave rise to that information, for which Dr. Jakobson alone is responsible.  Thus, even under the requirement as Dr. Jakobson represents it, any negligence that could be attributed to Wayne County Hospital is passive, facilitative, or steeped in a failure to provide quality control or review.

Couched in terms of *Brown Hotel*, were both Wayne County Hospital and Dr. Jakobson to be found liable, "the primary, efficient and direct cause" of the damage to Mrs. Hardwick would be the "positive antecedent negligence" of Dr. Jakobson's failure to adequately evaluate Mrs. Hardwick's mammogram and properly inform her of the results. *Brown Hotel Co.,* 224 S.W.2d at 167.  This exposed the hospital to liability. Its fault was a "negative tort" in  failing to "observe its affirmative duty[4] to the public" to provide quality assurance and control over the mammograms conducted at its facility and the resulting reports issued therefrom. *Id*.  "Both were in fault but not the same fault toward the party injured. The employees of the two companies were not acting jointly or concurrently or contributorily in committing the tort. They were not in pari delicto." *Id*.

In addition to the claims that Wayne County Hospital violated certain obligations under MQSA, Dr. Jakobson and his expert, Dr. Peitrafesa, attempt to demonstrate active negligence on

---

[4] Dr. Jakobson seems to place great weight on the fact that WCH's obligations were affirmative in nature. However, as illustrated in the quoted passage as well as in other cases in this district, if the negligence is the negative tort of failing to observe ones affirmative duties, indemnity is often appropriate.  *See, Asher v. Unarco Material Handling, Inc*., CIV.A. 6:06*548-DCR, 2007 WL 3046064 (E.D. Ky. Oct. 16, 2007) (In finding that the parties were not in pari delicto, the court stated, "As in Brown, these Defendants' fault is a negative tort of failing to observe their affirmative duty.").

the part of WCH by referencing the fact that the hospital marketed Dr. Jakobson and profited from his services in the hospital. However, Mrs. Hardwick's claims were not based on a theory that Wayne County Hospital negligently misrepresented that if she would come to their facility for a mammogram they would provide her with accurate results.[5]  Nor was her claim related to the hospital negligently representing to her that Dr. Jakobson was an employee of the hospital. The negligence at issue in Mrs. Hardwick's case, and therefore the negligence that is at issue in this indemnity claim, is the potential failure to adequately evaluate Mrs. Hardwick's mammogram and properly inform her of the results.  As such, the fact that WCH might have advertised for or profited from the services of Dr. Jakobson are irrelevant to this indemnity action.

Further, even if, as suggested by Judge Keller, the indemnity standards of active and passive negligence are subjective and unreliable in application, summary judgment is appropriate on this issue because Dr. Jakobson has failed to carry his burden under Rule 56.  Under the Rule 56 summary judgment standard, the moving party may make a showing that there is no dispute of material fact by demonstrating the absence of evidence to support one of the essential elements of the nonmoving party's claim, and once this burden is met, the nonmoving party, "must set forth specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56.  Further, "the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).  "Mere speculation will not suffice to

---

[5] This court recently had the occasion to consider whether Kentucky Courts would recognize a claim for negligent misrepresentation of the type referenced above and determined that they would not.  *Hunter v. Lake Cumberland Regional Hospital*, 06:11-cv-316-GFVT (E.D.Ky 2013).

defeat a motion for summary judgment." *ISP Chems. LLC v. Dutchland, Inc*., 771 F.Supp. 2d 744, 750 (W.D.Ky. 2011).

In response to Wayne County Hospital's assertions that there is no dispute under these facts that it was not actively negligent, Dr. Jakobson has done little more than cite general obligations of hospitals under the MQSA.  He asserts no facts and points to no evidence in the record that would support a finding that Wayne County Hospital violated any of these affirmative obligations.  To survive summary judgment Dr. Jakobson would be required to come forth with some facts and evidence in support of his claims that WCH's quality assurance program was substandard, that its equipment was faulty, or that audits were not sufficiently conducted.  [R. 104-9 at 9].  However, as is, Dr. Jakobson has hardly made any accusations of negligent activity by Wayne County Hospital, let alone provided any factual or evidentiary support to overcome WCH's motion for summary judgment.

This conclusion is unchanged by the report of Dr. Jakobson's expert.  In his report, Dr. Charles A. Peitrafesa does reference the MQSA and articulate some of its requirements on hospitals.  However, like Dr. Jakobson, he largely lists these provisions and applies them to no facts or evidence to suggest that WCH was negligent in any way other than creating the ostensible agency relationship.  In fact, the only MQSA standard that Dr. Peitrafesa applies to the facts in the case involves the dual obligation to report the results of mammograms to patients. [R. 104-9 at 9].  However, as to that obligation the expert states, "the facility letterhead, facility mailing, physician signature and 'we wish to report…' sentence beginning satisfy these dual requirements." *Id*.  As stated correctly and succinctly by Wayne County Hospital:

> Ultimately, to avoid summary judgment regarding Plaintiffs' indemnity claim, Dr.
> Jakobson must show that he and the Hospital acted *in pari delicto* in causing the
> delay in diagnosing Mrs. Hardwick's breast cancer. Dr. Jakobson has chosen to

> do so by alleging that the Hospital violated the MQSA. It is Dr. Jakobson's burden to prove that allegation. Dr. Jakobson has failed, however, to provide any specific facts showing how the Hospital violated any provision of the MQSA, or how such a violation contributed to Mrs. Hardwick's delayed diagnosis. At best, Dr. Jakobson relies upon speculation regarding the Hospital's compliance with the MQSA. Such speculation, however, is insufficient to defeat Plaintiffs' motion and is contradicted by Dr. Jakobson's own expert.

[R. 114 at 11].

It is true that by refusing to allow the Plaintiffs to import the determinations of the *Hardwick* litigation into this second case, the Court has afforded Dr. Jakobson the right to fully argue every issue of his case in the present action.  However, under the Federal Rules of Civil Procedure, in order for Dr. Jakobson to be able to raise those issues before a jury, he must first demonstrate to the Court at this stage that a genuine issue of material fact exists.  As Dr. Jakobson has failed to bring forth sufficient facts and evidence that a reasonable jury could find to constitute active negligence on the part of WCH so as to justify a legal determination that the two parties were in pari delicto, summary judgment is now appropriate in this case on that issue.

Finally, Dr. Jakobson argues that even if indemnity would ordinarily be appropriate, Wayne County Hospital cannot seek it this action because WCH proceeded as a volunteer in the previous action.  According to Dr. Jakobson, Wayne County Hospital initially had an obligation to put on a defense in the *Hardwick* action when there were allegations against its real employees, but "those allegations were never actively pursued by Mrs. Hardwick such that it was palpably obvious virtually from the inception of that case that there were no actual claims of independent negligence against the hospital such that Dr. Jakobson's interpretation was the focus of that litigation."  [R. 113 at 7].  In Dr. Jakobson's view, once this became clear to WCH and it continued to defend the action without tendering the defense to Dr. Jakobson, the hospital "took on his defense and, in the process, voluntarily assumed all risks incidental to any potential

judgment against him." [R. 7 at 23]. Notably, Dr. Jakobson cites no case law in support of this position.

The volunteer defense usually arises in the context of subrogation where, "[o]rdinarily one who discharges the debt of another without a legal or moral obligation to do so is considered a volunteer and will not be subrogated to the discharged debtor's rights against another." *Branch Banking Trust Co. v. Bartley*, 2004-CA-002663-MR, 2006 WL 1113632 (Ky. Ct. App. Apr. 28, 2006) (quoting *Dodson v. Key,* 508 S.W.2d 586, 588 (Ky.1974)). "Generally speaking, the party making payment is a volunteer if, in so doing, he has no right or interest of his own to protect, and acts without obligation, moral or legal, and without being requested by anyone liable on the obligation." *Id*. (citing 73 Am.Jur.2d *Subrogation* § 21 (2005)).

However, even if this tenant of subrogation law could be said to apply to indemnity, "[i]t is well settled that one who pays the debt of another is not a volunteer if in so doing he is acting to protect some interest of his own." *Standard Fire Ins. Co. v. Empire Fire & Marine Ins. Co.*, 234 S.W.3d 377, 381 (Ky. Ct. App. 2007). (*citing*, *Dodson,* 508 S.W.2d at 589). Counter to Dr. Jakobson's characterization, Wayne County Hospital had an interest throughout the duration of the underlying *Hardwick* litigation. Not only were allegations initially advanced against actual agents of the hospital, but Mrs. Hardwick also successfully argued that Dr. Jakobson was Wayne County Hospital's ostensible agent and therefore vicariously liable for his actions. Further, it is difficult for Dr. Jakobson to make this argument after he spent a great deal of time advancing potential ways the hospital could be held independently liable under these circumstances, each of which could have conceivably been raised by Mrs. Hardwick in the state court action. Perhaps from a judicial economy standpoint it would have been preferable for WCH to have brought Dr. Jakobson into the first action action, but Dr. Jakobson has advanced no rule of law precluding

24

WCH from defending the claims asserted against it by Mrs. Hardwick in the first claim, and then proceeding against Dr. Jakobson in indemnity if it were found liable.

In sum, there is no dispute of material fact that Wayne County Hospital and Dr. Jakobson were in an ostensible agency relationship.  In terms of the underlying acts of negligence at issue in this case, however, they were not in pari delicto.  This does not dispose of the case in its entirety, as issues including liability of Dr. Jakobson and amount of damages remain to be determined by a jury.  However, this conclusion does provide that as a matter of law, if the jury finds that Dr. Jakobson was negligent in relation to Mrs. Hardwick's mammogram, Wayne County Hospital would be entitled to indemnity.

D

In addition to their motion for summary judgment, the Hospital Plaintiffs have also moved to exclude one of Dr. Jakobson's experts, the aforementioned Dr. Charles A. Pietrafesa. As the subject matter covered Dr. Pietrafesa's report is essentially the same as the issues discussed above, the resolution of the motion for summary judgment essentially necessitates granting of the motion to exclude as well.

Dr. Pietrafesa is a licensed physician and experienced hospital administrator.  [R. 104-9]. According to Dr. Jakobson, the purpose of this expert is to aid "the jury in determining standards of care applicable to reasonable hospitals in the same or similar circumstances and whether [WCH's] actions in Mrs. Hardwick's case were consistent with those standards.  [R. 109 at 2]. In addition, Dr. Jakobson claims that his expert will be able to assist this Court in reaching the legal conclusions of this case.  [R. 109 at 3].  Though Dr. Jakobson claims that his expert has "many opinions" regarding the standard of care of hospitals, the actual report of Dr. Pietrafesa

reveals only two, which directly mirror Dr. Jakobson's arguments in opposition to the motion for summary judgment.

First, Dr. Pietrafesa surveys the nature of the association between WCH and Dr. Jakobson and opines that, "it is not unreasonable for Ms. Hardwick to have assumed a dependent affiliation or what was determined by the Court to be an (ostensible) agency relationship." [R. 104-6 at 7]. The expert notes that allowing this relationship to exist is outside the standard of care. Second, Dr. Pietrafesa states that it is his opinion with reasonable medical administrative certainty that, "WCH was inextricably linked to Dr. Jakobson," such that "it would reasonable for WCH to bear some of the risk or burden of the damage award to the Hardwicks for the negligent acts of its judged ostensible agent, Dr. Jakobson." [R. 104-9 at 7-8]. As basis for this opinion, the expert generally discusses the MQSA's affirmative obligations on hospitals and specifically notes their dual responsibility shared with the physician in sending the reports. Additionally, he notes that, "WCH was not a passive bystander, but an active, engaged participant in the community promotion and provision of mammography services to Ms. Hardwick and to Wayne County community of Women." [R. 104-9 at 10].

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides that an expert may provide an opinion at trial if, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" Fed. R. Evid. 702(a). The Sixth Circuit has interpreted Rule 702 to set forth three requirements: (1) the witness must be qualified by "knowledge, skill, experience, training, or education;" (2) the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue." (3) the testimony must be reliable. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008) (quoting

Fed.R.Evid. 702).  Though an expert can testify to a great many things within the confines of this rule, "[a]n expert opinion on a question of law is inadmissible.  *Chavez v. Carranza*, 559 F.3d 486, 498 (6th Cir. 2009) (citing *Berry v. City of Detroit,* 25 F.3d 1342, 1353–54 (6th Cir.1994).  "It is within the 'sole province of the trial court to instruct the jury on the law and its applicability.'" *Static Control Components, Inc., v. Lexmark Int'l, Inc.*, 2007 WL 7083655 at *7 (E.D.Ky. May 12, 2007) (quoting *Ames v. Dyne*, 1996 WL 662899, at *1 (6th Cir. Nov. 13, 1996) (table decision)).

In many ways it is difficult to distinguish between Dr. Pietrafesa's expert report and Dr. Jakobson's response in opposition to summary judgment.  Each makes that same arguments that Wayne County Hospital was negligent in creating an ostensible agency relationship, and Wayne County Hospital's transgressions of the MQSA and active advertising and profiting from the Dr. Jaksobson make it reasonable for the hospital to share some of the damages burden, which is to say that indemnity is not an appropriate remedy.  The principal difference, of course, is that Dr. Jakobson's response was required to set forth and argue conclusions of law, while Dr. Pietrfesa's was prohibited from doing so.  It is impermissible for Dr. Pietrefesa to testify, as he purports to do in his report, that an ostensible agency relationship was created between Dr. Jakobson and WCH or that the nature of the hospital's activities preclude indemnity in this case.  These are points of law which are in the province of the Court to either instruct the jury upon or decide.

Even though the report expressly reaches only these legal conclusions, Dr. Jakobson argues that he does not intend to elicit such opinions at trial, acknowledging that they would be inappropriate.  He argues that Dr. Pietrafesa should, however, be permitted to testify, "about the standards of care applicable to Wayne County Hospital in its dealings with Mrs. Hardwick and other patients and/or whether this hospital met that standard of care in this case as those are

27

preliminary questions of fact which must first be decided by a jury before a determination of ostensible agency can be determined." [R. 109 at 8]. He continues by noting that, while his expert might not be able to reach a conclusion about joint liability and indemnity, he should be permitted to testify as to the bases for those conclusions, namely the violations of the MQSA and the marketing and profiting from Dr. Jakobson's services. *Id.*

And while it is questionable whether these aspects of the report would have ever been sufficiently relevant to be presented to the jury, in the wake of the Court's ruling regarding the motion for summary judgment, they are certainly not relevant now. As discussed in great detail above, this is neither an ostensible agency claim nor a negligent misrepresentation claim. The presence of an ostensible agency relationship is relevant only to the extent that it opened Wayne County Hospital up to vicarious liability. Further, there is no factual issue with which Dr. Pietrafesa could help the jury because there is no dispute of material fact that there was an ostensible agency relationship. Similarly, the Court, having considered all of the information discussed by Dr. Pietrafasa in his report, has determined that the parties were not in pari delicto and that indemnity is an appropriate remedy. Thus, there remains nothing in Dr. Pietrfesa's report that would be relevant in helping the jury to understand the evidence or to determine a fact in issue.

The exclusion of Dr. Pietrafesa does not eviscerate Dr. Jakobsob's case. He represents that he has, "identified a number of expert witnesses who are expected to testify that he met the standard of care expected of him in the treatment of Mrs. Hardwick; that is, that his interpretation of the mammogram in question was reasonable and appropriate under the circumstances. Similarly he has disclosed other experts who are expected to testify that there was no change in Mrs. Harwick's condition, diagnosis, prognosis or treatment options in the year following the

alleged misinterpretation of the film in question." [R. 109 at 4]. This defense and these experts remain available to him.

Further, it should be noted that in this case it would have been appropriate for Dr. Jakobson to have retained an expert to opine on the relevant standard of care of hospitals and whether Wayne County Hospital's affirmative actions caused or combined with the actions of Dr. Jakobson to cause Mrs. Hardwick's *injuries*. However, that expert could not testify that an ostensible agency relationship existed between the parties, an issue not contested by the parties and having already been decided as a matter of law by the Court. The expert also could not testify, in contradiction to the Court's determination as a matter of law, that unrelated and passive negligence of WCH "inextricably coupled" it with Dr. Jakobson such that it would be "reasonable for WCH to bear some of the risk or burden of the damage award to the Hardwicks for the negligent act of its judged ostensible agent, Dr. Jakobson." [R. 104-9 at 8]. Because the only two opinions expressed in Dr. Pietrafesa's report purport do exactly that, the Court shall exclude Dr. Pietrfesa from testifying in this matter and his report from being submitted to the jury.

E

Finally, the Plaintiffs have made a motion for leave to amend their complaint. [R. 106]. Essentially the amended complaint updates and alters the facts of the original complaint and adds a claim for contribution. Dr. Jakobson opposes this motion on the basis that it is unnecessary and futile. [R. 108].

Amendments to pleadings are governed by Federal Rule of Civil Procedure 15, which provides that even if the party does not seek the amendment within the of right period, the court may give leave to permit such an amendment and should "freely give leave when justice so

requires." Fed.R.Civ.P. 15(a)(2).  The United States Supreme Court has read this provision broadly and the Sixth Circuit has recognized that "where the underlying facts would support, a motion for leave to amend should be granted, except in cases of undue delay, undue prejudice to the opposing party, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility." *Duggins v. Steak'n Shake*, Inc., 195 F.3d 828 (6th Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

Dr. Jakobson states that leave to amend should not be granted because he is already on notice of the added facts,  they add nothing to the complaint, and the amendment would therefore be a waste of time.  For this proposition he cites no case law and seems to instead rely exclusively on Rule 15, claiming that "justice does not require the proposed amendments."  [R. 108 at 1].  However, as previously articulated, the Supreme Court has addressed the circumstances under which courts should not permit amendments that should otherwise be freely granted.  Neither "waste of time," nor the defendant having already been placed on sufficient notice were included on the list.  If anything, based on the standards articulated by the Supreme Court, the fact that the Defendant was already on notice of the added facts would seem to militate against a finding that the amendment would be prejudicial, dilatory, in bad faith, or made for the purposes of delay.  As such, this argument does not defeat the Plaintiffs' motion for leave to amend.

Additionally, Dr. Jakobson briefly argues that it would be futile to allow the amendment to the complaint because, "the 'supplemental facts' asserted simply reassert a claim for the application of res judicata and/or collateral estoppel which this Court has already considered and rejected." [R. 108 at 3].  Dr. Jakobson is correct that motions for leave to amend a pleading may be denied on the basis that such an amendment is futile.  *See Foman*, 371 U.S. at 182.  However,

a review of the complaint does not reveal factual amendments that necessarily run counter to the Court's previous rulings.  On the contrary, the Hopsital Plaintiffs note that the renewed motion "actually removes facts that were previously alleged to demonstrate that res judicata applied." [R. 110 at 4].  For example, the Hospital Plaintiffs note that they removed facts concerning Dr. Jakobson's notice of the Hardwicks' lawsuit against the Hopstial Plaintiffs, and his decision not to intervene.  [R. 110 at 4].  Thus, Dr. Jakobson's futility argument is baseless.

Dr. Jakobson did mention the contribution claim added by the Hospital Plaintiffs; however, that mention comes in a sentence fragment that is its own paragraph, seemingly by mistake.  Specifically, Dr. Jakonbson states, ", as well as the addition of a new cause of action for contribution[.]" [R. 108 at 2].  Though the Court is unable to ascertain the meaning of this statement, in light of the Court's determination that the parties were not in pari delicto, the amendment of the complaint to include a claim for contribution would, in fact, be futile.  *See*, *Deneger,* 27 S.W.3d at 778.  Thus, the leave granted by the Court shall not extend to the filing of an amended complaint including a claim for contribution.

This case has been in litigation for an extensive period of time and rulings of this Court have clarified certain issues going forward.  A review of the complaint reveals that the amendments are largely factual clarifications made in response to these rulings.  Further, as Dr. Jakobson has advanced no recognized reason for denial, the Hospital Plaintiffs' motion for leave to amend the complaint shall be granted, except as it relates to their claim for contribution, and the Hospital Plaintiffs are therefore  permitted to file an amended complaint consistent with this opinion.

31

III

By virtue of its previous Orders, this Court determined that Wayne County Hospital and OHIC could not import the findings of the state court into this subsequent case, but that Dr. Jakobson should have the opportunity to litigate all relevant matters and put on his own defense. However, those decisions do not stand for the proposition that Dr. Jakobson has the right to bring all relevant matters before the jury.  To raise an issue before the jury, he must first produce sufficient evidence into the record to demonstrate to the Court that there remains a genuine dispute of material fact as to those issues.  To permit an expert to testify on his behalf at trial, he must first show the gatekeeper that this expert can assist the trier of fact to understand the evidence or to determine a fact in issue.  Dr. Jakobson has now had the opportunity to fully contest in this Court the issues of ostensible agency, the in pari delicto relationship between the parties, and the continued relevance of his expert, Dr. Peitrafesa, but has failed to carry his burden on each.

Therefore, this Court finds as a matter of law that though Wayne County Hospital and Dr. Jakobson were in an ostensible agency relationship, in terms of the underlying acts of negligence at issue in this case, they were not in pari delicto.  Again, this does not dispose of the case in its entirety, as issues including liability and amount of damages remain to be determined by a jury. However, this conclusion does provide that as a matter of law, if the jury finds that Dr. Jakobson was negligent in relation to Mrs. Hardwick's mammogram, Wayne County Hospital would be entitled to indemnity.  This determination also supports the exclusion of Dr. Pietrafesa, who proposes to testify to these legal conclusions that have already been decided by the Court, which would be neither relevant nor helpful to the jury.  Finally, though the Court's ruling on indemnity precludes an amended complaint that includes a claim for contribution, otherwise there is no

valid justification for withholding leave for the Hospital Plaintiffs to file an amended complaint in conformity with this Memorandum Opinion and Order.

Accordingly, it is hereby **ORDERED** as follows:

1.      The Hospital Plaintiffs' Motion for Leave to File an Amended Complaint [R. 106] is **GRANTED** in part and **DENIED** in part;

2.      The Hospital Plaintiffs are granted leave to file an Amended Complaint in conformity with this opinion;

3.      The Hospital Plaintiffs' Motion to Exclude Charles A. Pietrafesa [R. 107] is **GRANTED**; and

4.      The Hospital Plaintiffs' Motion for Partial Summary Judgment [R. 112] is **GRANTED**.


This 3rd Day of May, 2013.

**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**

33